UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 22-20517-CR-ALTONAGA

UNITED STATES OF AMERICA,
    Plaintiff,

vs.

ALEJANDRO GUERRERO.
    Defendant.

_____/

### ALEJANDRO GUERRERO'S OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT ("PSI")

The draft PSI calculates Mr. Guerrero's offense level at 37 based on a base offense level of 38 pursuant to U.S.S.G. § 2D1.1(a)(5) and the drug quantity table at subsection (c)(1), a two-level enhancement pursuant to § 3C1.2 for reckless endangerment during flight, and a three-level reduction for acceptance of responsibility. Mr. Guerrero, through undersigned counsel, respectfully makes the following factual corrections and legal objections.

### FACTUAL CORRECTIONS

*First*, at ¶ 9, Mr. Guerrero objects to the statement that he was "upon the high seas" when he was apprehended, and requests that this be removed from draft PSI. As was described in the Motion to Dismiss, which was filed at DE 22 and joined by Mr. Guerrero at DE 27 and 29, he contests that he was apprehended, as a legal matter, "on the high seas."

*Second*, at ¶ 12, Mr. Guerrero objects to the draft PSI's description of the facts that gave rise to jurisdiction in this case. For example, ¶ 12 states that the "boarding

team inquired who the master or individual in charge was; however, none of the three defendants responded affirmatively." But in fact, pursuant to an evidentiary hearing, the Court found that the testifying officer was not credible when he claimed that the defendants were asked who the individual in charge of the vessel was. *See* DE 49. The record thus contradicts the fact that the defendants were asked this question.

Paragraph 12 of the draft PSI should be amended to mirror the factual description in the stipulated factual proffer, which is as follows:

> At an evidentiary hearing held in this case, the Court found that the USCG boarding officer asked each individual who the master of the vessel was and that none of the three individuals identified themselves as the master. Furthermore, the Court also found that when individually asked if any of the three individuals wished to make a claim of nationality for the vessel, all three refused.

*See* DE 56.

## LEGAL OBJECTIONS

### I.      Probation has confirmed that the Safety Valve Provision Applies

At ¶ 19, the draft PSI confirmed that Mr. Guerrero meets the criteria of subsections (a)(1) through (a)(4) of the safety valve provision at U.S.S.G. § 5C1.2, but safety valve was not recommended because, the PSI claimed, "according to Assistant United States Attorney Yvonne Rodriguez Schack, the defendant has not been fully debriefed by the government and agents following his instant arrest and has not provided a complete and truthful statement addressing his involvement in and knowledge of the offense." However, according to the Probation Officer, this statement was intended only to mean that AUSA Rodriguez-Schack had not yet responded to the Probation Office's inquiry regarding safety valve. The Government

has since responded and confirmed that Mr. Guerrero had in fact satisfied all requirements of safety valve. Indeed, Mr. Guerrero had completed a full debrief on August 8, 2023, and the agents at that interview had confirmed as of that date that a complete and truthful statement had been provided.

Undersigned understands that the Final PSI will thus apply the safety valve reduction. Accordingly, Mr. Guerrero objects to the following paragraphs, and requests that they be updated to reflect that he has met the requirements of safety valve: ¶ 19 (should apply safety valve), ¶ 29 (total offense level), and ¶¶ 60-61 (should reflect that Mr. Guerrero is not subject to a ten-year mandatory minimum sentence).

## II.     The Enhancement for Obstruction of Justice Does Not Apply

Mr. Guerrero objects to ¶¶ 17 and 24 of the draft PSI, which recommend a two-level enhancement under U.S.S.G. § 3C1.2. That Section of the Guidelines provides:

> If the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer, increase by 2 levels.

U.S.S.G. § 3C1.2. The draft PSI applies this enhancement because the "Coast Guard had to employ warning and disabling fire upon the go-fast vessel" and therefore, "the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." ¶ 17. But other than the defendants' failure to "heave to" upon being discovered by the Coast Guard, there is no allegation of any conduct that created any risk of injury to anyone. And flight alone does not support application of the enhancement. *See, e.g., United States v. Wilson*, 392 F.3d 1243, 1247 (11th Cir. 2004)

("It is obvious from the text of section 3C1.2 that flight alone is insufficient to warrant an enhancement under this section."). As the Court stated in *Wilson*, for the enhancement to apply, it "is the defendant's conduct, not that of the pursuing officers, which must recklessly create the substantial risk of death or serious bodily injury to others." *Id.*

Moreover, the plain language of the guideline requires that there be "another person" as to whom the risk of injury is created, but no such person exists here. Application Note 4 clarifies the point: "another person" includes "any person, *except a participant in the offense who willingly participated in the flight*." § 3C1.2 app. n. 4. Here, there were only three persons in the go-fast vessel that was the target of the Coast Guard's fire. All three have been charged as co-conspirators in this case, and there is no evidence that there was anyone else in the vicinity who would have been at risk due to their flight. Thus, the enhancement at § 3C1.2 does not apply.

Finally, on facts similar to those in this case in which defendants in a vessel have fled and the Coast Guard has used disabling fire, Courts in this district have not applied the enhancement at § 3C1.2. *See, e.g., United States v. Eulises Farias Mieres*, Case No. 22-CR-20163-WILLIAMS, DE 70 (S.D. Fla. June 12, 2023); *United States v. Jose Hugo Estupinan*, Case No. 22-CR-20571-MARTINEZ, DE 79 (S.D. Fla. May 30, 2023); *United States v. Yesid Degoberto Epieyu Epieyu*, Case No. 22-CR-20014-GAYLES, DE 94 (S.D. Fla. November 1, 2022); *United States v. Luis Alfredo Garcia-Vega*, Case No. 21-CR-20360-ALTONAGA, DE 68 (November 3, 2021).

4

## III.     The Minor Role Reduction Should Apply

Mr. Guerrero also objects to the PSI's failure to apply a minor role reduction at ¶¶ 23 and 29.

The Sentencing Guidelines provide for a downward adjustment in a person's applicable offense level where he or she "was a minor participant in any criminal activity." § 3B1.2(b) (2018). The adjustment may be appropriate where, as here, a defendant is held accountable "for the conduct in which the defendant personally was involved," but he "performs a limited function in the criminal activity." U.S.S.G. § 3B1.2 cmt. n.3(A). The factors to be considered in the fact-based determination of whether to apply minor role include "(i) the degree to which the defendant understood the scope and structure of the criminal activity," "(ii) the degree to which the defendant participated in planning or organizing the criminal activity," "(iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making," "(iv) the nature and extent of the defendant's participation in the commission of the criminal activity," and "(v) the degree to which the defendant stood to benefit from the criminal activity." *Id.* at cmt. n. 3(C).

The forgoing factors were incorporated into the guidelines after a 2016 U.S. Sentencing Commission study found that "mitigating role is applied inconsistently and more sparingly than the Commission intended." U.S.S.G. Supp. to App'x C, amend. 794 (Nov. 1, 2016). The Commission specifically included the factors after being "persuaded by public comment and a detailed review of cases involving low-level offenders…that providing a list of factors will give the courts a common

5

framework for determining whether to apply a mitigating role adjustment." *Id.* The Commission went on to include the following instructive example of the intended application of the factors: "a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline." U.S.S.G. § 3B1.2 cmt. n. 3(C).

In this case, Mr. Guerrero's conduct falls squarely within that contemplated by the minor role provision. He is an indigent fisherman who, prior to his involvement in this offense, was living with and supporting his partner and toddler son in Venezuela. PSI, ¶ 41. He had no proprietary interest in the criminal activity in which he engaged and for which he has been held responsible, which was the transport of 623 kilograms of cocaine. Instead, Mr. Guerrero was offered payment for the performance of discrete tasks associated with transporting the vessel. As such, his case is analogous to the example at cmt. n. 3(C), and accordingly, the factors under that provision weigh strongly in favor of application of the minor role reduction.

*First*, Mr. Guerrero had little or no understanding of the scope or structure of the overarching criminal activity. He had no role in or knowledge of the quantity of drugs that he would be transporting, when they would be transported, or where they were to be transported, let alone in the procurement of those drugs from suppliers or the sale of the drugs to buyers. *Second*, he played no role in the planning or organizing of the criminal activity, including the transportation itself. Mr. Guerrero's conduct began after he was taken to a beach where he was presented with a vessel that had already been prepared and packed by others. *Third*, Mr. Guerrero had no decision-

making authority, nor did he have any influence over the decision-making. He did not decide—and he could not have influenced—when the vessel departed, where it went, what route it took, or what it carried. *Fourth*, the nature and extent of Mr. Guerrero's participation was limited to performing discrete tasks on the vessel to which he was assigned. Neither the boat nor the cargo belonged to Mr. Guerrero. *Fifth*, Mr. Guerrero was offered $5,000 (U.S. dollars) for his conduct in this case, which amounts to approximately what he earns in a year. However, as meaningful as that amount would have been to him, it bears emphasis that the expected $5,000 amount was nearly negligible when compared to the estimated street value of the drugs Mr. Guerrero was tasked with helping to transport. The street value was approximately $74,760,000,[1] meaning that the amount Mr. Epieyu was offered for his role in this conduct represented less than 0.007% (less than one-hundredth of one percent) of the total value. Thus, substantially all of the $75 million gain associated with transporting the cocaine in question presumably would have gone to others who participated more significantly in—and are more culpable for—arranging the transport of this particular quantity of cocaine.

For these reasons, Mr. Guerrero respectfully requests application of the minor role reduction.

*     *     *

---

[1] The United Nations Office on Drugs and Crime estimated the 2019 street price of one gram of cocaine at $120. UNITED NATIONS OFFICE ON DRUGS AND CRIME, WORLD DRUG REPORT 2021: STATISTIC ANNEX 8.1 PRICE AND PURITY OF DRUGS 32 (2021), https://www.unodc.org/documents/data-and-analysis/WDR2021/8.1_Prices_an_purities_of_Drugs.pdf.

Should the Court grant the minor role reduction here, Mr. Guerrero's guidelines calculation would be as follows: base offense level of 38, reduced to 34 (per § 2D1.1(a)(5)(A) and (B)(iii)); reduced to 32 under the safety valve provision, reduced to 30 for minor role, and reduced to 27 for acceptance of responsibility. Mr. Guerrero will also qualify for the reduction for zero-point, first-time offenders that is forthcoming at Guideline Amendment § 4C1.1. If the Court agrees to apply this reduction, his offense level will be 25. Given a criminal history category of I, *see* PSI ¶ 32, his guideline range would be 57-71 months.

Respectfully Submitted,

**MICHAEL CARUSO**
**FEDERAL PUBLIC DEFENDER**

By:  */s/ Srilekha Jayanthi*
Assistant Federal Public Defender
Special A No. A5502728
150 W. Flagler Street, Suite 1700
Miami, Florida 33130-1556
Tel: (305) 530-7000
srilekha_jayanthi@fd.org

### CERTIFICATE OF SERVICE

I HEREBY certify that on **August 28, 2023**, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Srilekha Jayanthi*

8