CASE NO. 22-CR-20517-Altonaga

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JUNIOR CHIRINO-LOVERA, *et al.*,

    Defendants.

_____/

## **SENTENCING MEMORANDUM**

Mr. Junior Chirino-Lovera, through undersigned counsel, files the following sentencing memorandum.

As the Court is aware, when considering the § 3553(a) factors, the Court is directed to "**impose a sentence sufficient, but not greater than necessary**" to fulfill the goals of 18 U.S.C. § 3553(a)(emphasis added); *see also United States v. Ministro-Tapia*, 470 F.3d 137, 142 (2nd Cir. 2006)("if a district court were explicitly to conclude that two sentences equally served the statutory purpose of § 3553, it could not, consistent with the parsimony clause, impose the higher"). Mr. Chirino-Lovera submits that a sentence below the guideline range is sufficient to satisfy the goals of sentencing, as articulated in 18 U.S.C. § 3553, for the following reasons.

Mr. Chirino-Lovera is a humble, good man. He is a father of three who supports his family in Venezuela as a fisherman. PSI, ¶ 52. He has been charming, polite, and extremely appreciate of the legal services he has received. He has never been arrested

before this occurrence and would never have agreed to do this but for the extreme economic catastrophe in his home country of Venezuela. This experience has taken such a toll on Mr. Chirino-Lovera that he will never think about doing something like this again.

On approximately October 16, 2022, Mr. Chirino-Lovera embarked on a tiny boat completely loaded with three people, gas tanks, and packages of contraband. This 600-mile trip from Venezuela to the Dominican Republic would take 5 or 6 days. Mr. Craniolateral embarked on this dangerous mission for $5,000 dollars. Most Americans would not dream of agreeing to this dangerous journey. However, Mr. Chirino-Lovera was desperate because he could not support his family. He had three kids and a sick wife and couldn't feed them because of the economy in Venezuela. PSI, ¶ 40.

On October 18, 2023, he was arrested in the Caribbean Sea by the United States Coast Guard. Since that time, Mr. Chirino-Lovera has not been treated humanely or fairly. His due process rights have been violated. He remained aboard the Coast Guard Cutter for eight days before being taken to court. He then spent 133 days, over four months, in a Puerto Rican jail because the authorities forgot about him. He arrived in Miami on March 8, 2023.

After his arrival in Miami, his lawyer decided to challenge this Court's jurisdiction because the discovery in this matter indicated that Mr. Chirino-Lovera told the Coast Guard, prior to being transferred to a Coast Guard vessel, that he and the vessel he was on were from Venezuela. However, the Coast Guard did not contact Venezuela to ask permission to board and arrest this Venezuelan vessel. At the evidentiary hearing on this

matter, this Court found that the Coast Guard crewmember responsible for questioning Mr. Chirino-Lovera lied under oath about the event.

Mr. Chirino-Lovera will receive a substantial sentence from this Court for his violation of the law. The Coast Guard should be sent a message that they must follow the rule of law as well.

Mr. Chirino-Lovera provided nothing more than a living, breathing person that could operate a boat and was desperate enough to risk his life. The reality is the drug dealers in charge viewed Mr. Chirino-Lovera's mission as a calculated risk. He was expendable. The drug dealers reaping the benefits of sending this cocaine across the ocean surely realized that the vessel, its occupants, and the cocaine may not reach its destination. But apparently if you send enough desperate people with cocaine, enough trips succeed to keep the producers of the cocaine in business.

It should also be noted that Mr. Chirino-Lovera cooperated with the United States authorities regarding the full-time professional drug dealers who hired him, but his knowledge of the enterprise was so limited that he could not help law enforcement.

Mr. Chirino-Lovera's decision to try and help his family by taking this dangerous voyage has become a nightmare. He will never make such a bad decision again. The United States Sentencing Commission's recent amendment to the Guidelines, § 4C1.1, which reduces an otherwise qualifying defendant's offense level by two points if he or she has zero criminal history points underscores this point. This Guideline Amendment is based on the Sentencing Commission's analysis of empirical evidence and its conclusion that first time offenders that are non-violent and not sexual deviants are unlikely recidivists.

Longer sentences are simply not needed to prevent recidivism and satisfy the goals of 18 U.S.C. § 3553 for these non-violent first-time offenders.

Most first-time offenders learn their lesson because becoming involved with the criminal justice system is humiliating and humbling. For a first-time offender, just being *arrested* is a traumatic experience. The process that follows the arrest is an eye-opening experience for those that have not been through it before. It is especially acute for Mr. Chirino-Lovera because of the aforementioned lack of due process he has experienced.

WHEREFORE, Mr. Chirino-Lovera respectfully requests that the Court sentence him below the advisory guideline range.

Respectfully submitted,

JOHN W. WYLIE, P.A.

By:  s/John W. Wylie
John W. Wylie
Florida Bar No. 0133817
40 N.W. 3rd Street, PH 1
Miami, Florida 33128
Tel: (305) 586-1338
jww@johnwylielaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

By:  s/John W. Wylie
John W. Wylie